ORAL ARGUMENT SCHEDULED FOR MAY 7, 2019

No. 18-1202

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

PRODUCERS OF RENEWABLES UNITED FOR INTEGRITY TRUTH AND TRANSPARENCY,

*Petitioner*,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

*Respondent*,

and

HOLLYFRONTIER REFINING & MARKETING LLC, HOLLYFRONTIER CHEYENNE REFINING LLC, SINCLAIR WYOMING REFINING CO., AND SINCLAIR CASPER REFINING CO.,

*Intervenors-Respondents*.

On Petition for Review of Final Agency Actions of the U.S. Environmental Protection Agency

## FINAL BRIEF OF INTERVENORS-RESPONDENTS

Jeffrey R. Holmstead
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street, NW, Suite 900
Washington, D.C. 20036
Tel: (202) 828-5800

Timothy K. Webster
Ryan C. Morris
Peter Whitfield
Christopher S. Ross*
SIDLEY AUSTIN LLP
1501 K Street, NW
Washington, D.C. 20005
Tel: (202) 736-8940

DATED: April 1, 2019

*Admitted only in New York and Ohio; pending approval of application for admission to the D.C. Bar, practicing law in D.C. under the supervision of principals of the firm who are members in good standing of the D.C. Bar.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Under Circuit Rule 28(a)(1), Intervenors-Respondents provide the following list of parties to this case, rulings under review, and related cases:

1.     Parties and Amici

The Brief for Petitioner Producers of Renewables United for Integrity Truth and Transparency (PRUITT) lists all parties, intervenors, and amici.

2.     Rulings Under Review

As discussed in this Brief, Intervenors-Respondents disagree with PRUITT and the U.S. Environmental Protection Agency (EPA) over the scope of the rulings under review.  In particular, Intervenors-Respondents do not believe that PRUITT's Petition for Review adequately identified the following five informal adjudications:

- Grant of Request for Extension of Small Refinery Temporary Exemption Under the Renewable Fuel Standards Program for Sinclair Casper Refining Company's Sinclair Casper Refinery, Dec. 20, 2017;

- Grant of Request for Extension of Small Refinery Temporary Exemption Under the Renewable Fuel Standards Program for Sinclair Casper Refining Company's Sinclair Casper Refinery, Dec. 21, 2017;

- Grant of Request for Extension of Small Refinery Temporary Exemption Under the Renewable Fuel Standards Program for Sinclair Wyoming Refining Company's Sinclair Wyoming Refinery, Dec. 20, 2017;

- Grant of Request for Extension of Small Refinery Temporary Exemption Under the Renewable Fuel Standards Program for Sinclair Wyoming Refining Company's Sinclair Wyoming Refinery, Dec. 21, 2017;

- Grant of Request for Extension of Small Refinery Temporary Exemption Under the Renewable Fuel Standards Program for HollyFrontier Cheyenne Refining LLC's Cheyenne, WY Refinery, Jan. 24, 2018.

Petitioner also seeks review of a regulation, 40 C.F.R. § 80.1441, and four final rulemakings:

- Regulation of Fuel and Fuel Additives: Changes to Renewable Fuel Standard Program, 75 Fed. Reg. 14,670 (Mar. 26, 2010);

- Renewable Fuel Standard Program: Standards for 2014, 2015, and 2016 and Biomass-Based Diesel Volume for 2017, 80 Fed. Reg. 77,420 (Dec. 14, 2015);

- Renewable Fuel Standard Program: Standards for 2017 and Biomass-Based Diesel Volume for 2018, 81 Fed. Reg. 89,746 (Dec. 12, 2016);

- Renewable Fuel Standard Program: Standards for 2018 and Biomass-Based Diesel Volume for 2019, 82 Fed. Reg. 58,486 (Dec. 12, 2017).

3.    Related Cases

This case has not been before this Court or any other court.  However, the U.S. Court of Appeals for the Tenth Circuit vacated and remanded final EPA actions related to the five Requests for Extension of Small Refinery Temporary Exemption Under the Renewable Fuel Standards Program listed above in *Sinclair Wyoming Refining Co. v. EPA*, 887 F.3d 986 (10th Cir. 2017), *Sinclair Wyoming Refining Co. v. EPA*, Case No. 16-9561 (10th Cir.), and *HollyFrontier Refining v. EPA*, Case No. 16-9564 (10th Cir.).

The following cases involve the same rulemakings for which Petitioner

seeks review in this case:

a.  Regulation of Fuels and Fuel Additives: Changes to Renewable Fuel

Standard Program, published at 75 Fed. Reg. 14,670 (Mar. 26, 2010).

- *National Petrochemical & Refiners Association v. EPA*, 630 F.3d 145 (D.C. Cir. 2010), *reh'g en banc denied*, 643 F.3d 958 (D.C. Cir. 2011), *cert. denied*, 132 S. Ct. 571 (2011);

- *National Chicken Council v. EPA*, 687 F.3d 393 (D.C. Cir. 2012);

- *National Biodiesel Board v. EPA*, 843 F.3d 1010 (D.C. Cir. 2016);

- *Alon Refining Krotz Springs v. EPA*, No. 16-1052 (and consolidated cases) (D.C. Cir. docketed Feb. 12, 2016);

- *Renewable Fuels Association v. EPA*, No. 18-1154 (D.C. Cir. docketed June 4, 2018).

b.  Renewable Fuel Standard Program: Standards for 2014, 2015, and 2016

and Biomass-Based Diesel Volume for 2017, 80 Fed. Reg. 77,420 (Dec. 14, 2015).

- *Americans for Clean Energy v. EPA*, 864 F.3d 691 (D.C. Cir. 2017);

- *Alon Refining Krotz Springs v. EPA*, No. 16-1052 (and consolidated cases) (D.C. Cir., docketed Feb. 12, 2016).

c.  Renewable Fuel Standard Program: Standards for 2017 and Biomass-

Based Diesel Volume for 2018, 81 Fed. Reg. 89,746 (Dec. 12, 2016).

- *Coffeyville Resources Refining & Marketing, LLC v. EPA*, No. 17-1044 (and consolidated cases) (D.C. Cir., docketed Feb. 9, 2017).

d.  Renewable Fuel Standard Program: Standards for 2018 and Biomass-

Based Diesel Volume for 2019, 82 Fed. Reg. 58,486 (Dec. 12, 2017).

- *American Fuel & Petrochemical Manufacturers v. EPA*, No. 17-1258 (and consolidated cases) (D.C. Cir.), argument held February 20, 2019.

- *Growth Energy v. EPA*, No. 19-1023 (D.C. Cir., docketed Feb. 4, 2019).

e. Regulation of Fuels and Fuel Additives: 2012 Renewable Fuel Standards,

77 Fed. Reg. 1320 (Jan. 9, 2012).

- *American Petroleum Institute v. EPA*, 706 F.3d 474 (D.C. Cir. 2013).

**CORPORATE DISCLOSURE STATEMENT UNDER FED. R. APP. P. 26.1**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, HollyFrontier Refining & Marketing LLC and HollyFrontier Cheyenne Refining LLC hereby state that each is a wholly owned subsidiary of HollyFrontier Corporation, which is a publicly held company.  HollyFrontier Corporation is a Delaware corporation with its principal place of business in Dallas, Texas.  No other publicly held company has a 10% or greater ownership interest in HollyFrontier Refining & Marketing LLC and HollyFrontier Cheyenne Refining LLC.

HollyFrontier Refining & Marketing LLC and HollyFrontier Cheyenne Refining LLC are both limited liability companies formed under the laws of the State of Delaware.  Both have their principal place of business located at 2828 North Harwood, Suite 1300, Dallas, Texas 75201.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, Sinclair Wyoming Refining Company and Sinclair Casper Refining Company certify they are wholly owned subsidiaries of Sinclair Oil Corporation, which is a wholly owned subsidiary of The Sinclair Companies.  The Sinclair Companies is a privately held corporation with no parent corporation.  Sinclair Wyoming Refining Company and Sinclair Casper Refining Company are in the business of refining crude petroleum into refined products, primarily diesel and gasoline.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..............i

CORPORATE DISCLOSURE STATEMENT UNDER FED. R. APP. P. 26.1 ......v

TABLE OF AUTHORITIES ................................................................. viii

GLOSSARY OF ABBREVIATIONS .................................................. xiii

INTRODUCTION ........................................................................1

STATUTES AND REGULATIONS.....................................................3

STATEMENT OF THE CASE............................................................3

I.    Statutory and Regulatory Framework ........................................3

      A.    Congress's Enactment of the Renewable Fuel Standard Program and
            Instruction to EPA to Oversee It ........................................3

      B.    Congress's Built-In Protections for Small Refineries..........................4

II.   Factual Background ......................................................................6

      A.    EPA's Administration of the RFS Program ..........................6

      B.    EPA's Remedy to Sinclair and HollyFrontier on Remands from the
            Tenth Circuit.....................................................................6

      C.    EPA's Grants of Exemptions on Remand ............................8

SUMMARY OF THE ARGUMENT .....................................................10

ARGUMENT .....................................................................................12

I.    This Court Lacks Jurisdiction over the Petition. ...........................12

      A.    PRUITT Has Failed to Establish Standing..........................13

      B.    PRUITT's Petition Failed to Identify Final Agency Actions Related to
            Its Key Claims. ..................................................................18

      C.    PRUITT's Challenge Is Untimely.......................................19

D.  PRUITT Has Failed to Satisfy the Procedural Requirements for Bringing a Case Based on "Grounds Arising After." ..........................25

E.  PRUITT's Challenge Is in the Wrong Court.......................................28

II.  Even if the Court Has Jurisdiction, EPA Has Properly Administered the RFS Program and Reasonably Provided a Remedy to Intervenors........................30

A.  Standard of Review ..............................................................................30

B.  EPA Has Discretion When It Implements Remedies..........................31

C.  The Exemption Decisions Were Consistent with the Law and Neither Arbitrary Nor Capricious. ...................................................................35

CONCLUSION ..........................................................................................................40

CERTIFICATE OF COMPLIANCE .........................................................................41

CERTIFICATE OF SERVICE ..................................................................................42

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Alliance Houston v. EPA*,
  906 F.3d 1049 (D.C. Cir. 2018) ............................................................. 13

*Am. Rivers v. FERC*,
  895 F.3d 32 (D.C. Cir. 2018) ................................................................. 19

*\*Ams. for Clean Energy v. EPA*,
  864 F.3d 691 (D.C. Cir. 2017) .............................................. 31, 32, 36

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .............................................................................. 17

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006) .............................................................................. 14

*Dalton Trucking, Inc. v. EPA*,
  808 F.3d 875 (D.C. Cir. 2015) ........................................................ 28, 30

*Entravision Holdings, LLC v. FCC*,
  202 F.3d 311 (D.C. Cir. 2000) .............................................................. 19

*Etelson v. OPM*,
  684 F.2d 918 (D.C. Cir. 1982) .............................................................. 27

*ExxonMobil Oil Corp. v. FERC*,
  487 F.3d 945 (D.C. Cir. 2007) .............................................................. 26

*Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*,
  460 F.3d 13 (D.C. Cir. 2006) ................................................................ 18

*Grocery Mfrs. Ass'n v. EPA*,
  693 F.3d 169 (D.C. Cir. 2012) .............................................................. 13

*Harrison v. PPG Indus.*,
  446 U.S. 578 (1980) .............................................................................. 19

*\*Hermes Consol. LLC v. EPA*,
  787 F.3d 568 (D.C. Cir. 2015) ......................................................... 5, 33

*Indep. Equip. Dealers Ass'n v. EPA*,
    372 F.3d 420 (D.C. Cir. 2004) ........................................................... 18

*LaRouche's Comm. for a New Bretton Woods v. FCC*,
    439 F.3d 733 (D.C. Cir. 2006) ........................................................... 19

*\*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................... 1, 15

*Malta Irr. Dist. v. FERC*,
    955 F.2d 59 (D.C. Cir. 1992) ............................................................ 34

*\*Nat'l Biodiesel Bd. v. EPA*,
    843 F.3d 1010 (D.C. Cir. 2016) ............................................ 21, 25, 33, 34

*\*Neustar, Inc. v. FCC*,
    857 F.3d 886 (D.C. Cir. 2017) ....................................................... 34, 35

*\*Niagara Mohawk Power Corp. v. Fed. Power Comm'n*,
    379 F.2d 153 (D.C. Cir. 1967) ....................................................... 11, 31

*\*Oljato Chapter of Navajo Tribe v. Train*,
    515 F.2d 654 (D.C. Cir. 1975) .......................................................... 27

*POM Wonderful, LLC v. FTC*,
    777 F.3d 478 (D.C. Cir. 2015) ....................................................... 34, 35

*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947) .................................................................... 34

*Shalala v. Guernsey Mem'l Hosp.*,
    514 U.S. 87 (1995) ..................................................................... 34

*\*Shays v. FEC*,
    528 F.3d 914 (D.C. Cir. 2008) ...................................... 11, 24, 34, 35

*\*Sierra Club v. EPA*,
    292 F.3d 895 (D.C. Cir. 2002) ....................................................... 14, 17

*Sierra Club v. EPA*,
    815 F.3d 22 (D.C. Cir. 2016) .......................................................... 20

*Sinclair Wyo. Refining Co. v. EPA,
    887 F.3d 986 (10th Cir. 2017) ...................................................7, 9, 28, 29, 32, 38

Summers v. Earth Island Inst.,
    555 U.S. 488 (2009)......................................................................................17

Toilet Goods Ass'n v. Gardner,
    387 U.S. 158 (1967)......................................................................................27

Univ. of Tex. Sw. Med. Ctr. v. Nassar,
    570 U.S. 338 (2013)......................................................................................23

*Utility Air Regulatory Grp. v. EPA,
    744 F.3d 741 (D.C. Cir. 2014)................................................................25, 26

*Warth v. Seldin,
    422 U.S. 490 (1975).....................................................................................14

**Statutes**

5 U.S.C. § 706(2) ............................................................................................30

*42 U.S.C. § 7545(o) ........................................................................................3

42 U.S.C. § 7545(o)(1)...................................................................................37

42 U.S.C. § 7545(o)(1)(I) ...............................................................................23

42 U.S.C. § 7545(o)(1)(K)............................................................................4, 7

42 U.S.C. § 7545(o)(2)(A)..............................................................................32

42 U.S.C. § 7545(o)(5)......................................................................................4

42 U.S.C. § 7545(o)(7)....................................................................................33

*42 U.S.C. § 7545(o)(9) ...................................................................4, 10, 2, 38

*42 U.S.C. § 7545(o)(9)(A)...............................................................................5

*42 U.S.C. § 7545(o)(9)(B)....................................................................5, 2, 33

*42 U.S.C. § 7607(b)(1) ....................................... 10, 11, 19, 20, 26, 28, 30

42 U.S.C. § 7607(d)(1)....................................................................................33

*42 U.S.C. § 7607(d)(7)(B) ...................................................................25, 26

42 U.S.C. § 7607(d)(9) ...............................................................................30

**Other Authorities**

40 C.F.R. part 2, subpart B ..........................................................................10

40 C.F.R. § 80.1405 ......................................................................................3

40 C.F.R. § 80.1407 ......................................................................................3

40 C.F.R. § 80.1425 ......................................................................................4

40 C.F.R. § 80.1426 ......................................................................................4

*40 C.F.R. § 80.1427 ........................................................................4, 36, 37

40 C.F.R. § 80.1429 ......................................................................................4

*40 C.F.R. § 80.1441 ...............................................................................6, 24

40 C.F.R. § 80.1451 ......................................................................................4

40 C.F.R. § 80.1452 ......................................................................................4

75 Fed. Reg. 14,670 (Mar. 26, 2010) ...........................................................6

75 Fed. Reg. 76,790 (Dec. 9, 2010) ...........................................................21

76 Fed. Reg. 38,844 (July 1, 2011) ............................................................22

*77 Fed. Reg. 1,320 (Jan. 9, 2012) ......................................................23, 32

80 Fed. Reg. 77,420 (Dec. 14, 2015) ...........................................................6

81 Fed. Reg. 89,746 (Dec. 12, 2016) ...........................................................6

*82 Fed. Reg. 58,486 (Dec. 12, 2017) .....................................................6, 22

Fed. R. App. P. 15 .......................................................................................19

EPA, Annual Compliance Data for Obligated Parties and Renewable
    Fuel Exporters under the Renewable Fuel Standard (RFS)
    Program,
    https://www.epa.gov/fuels-registration-reporting-and-compliance-
    help/annual-compliance-data-obligated-parties-and ..........................................15

EPA, Estimated versus Actual Gasoline and Diesel Volume Produced
    for Domestic Use,
    https://www.epa.gov/fuels-registration-reporting-and-compliance-
    help/annual-compliance-data-obligated-parties-and ..........................................16

EPA, Financial and Other Information to Be Submitted With 2016
    RFS Small Refinery Hardship Exemption Requests (Dec. 6, 2016),
    https://www.epa.gov/sites/production/files/2016-12/documents/rfs-
    small-refinery-2016-12-06.pdf ..............................................................................6

EPA, RINs Generated Transactions, https://www.epa.gov/fuels-
    registration-reporting-and-compliance-help/rins-generated-
    transactions ..........................................................................................................15

EPA, RIN Use, https://www.epa.gov/fuels-registration-reporting-and-
    compliance-help/rin-use........................................................................................15

U.S. Energy Info. Admin., Monthly Biodiesel Production Report,
    https://www.eia.gov/biofuels/biodiesel/production/biodiesel.pdf.......................15

*Authorities chiefly relied on are marked by an asterisk

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| DOE | Department of Energy |
| EPA | Environmental Protection Agency |
| PRUITT | Producers of Renewables United for Integrity Truth and Transparency |
| RFS | Renewable Fuel Standard |
| RIN | Renewable Identification Numbers |
| SCR | Sinclair Casper Refining Company |
| SWR | Sinclair Wyoming Refining Company |

# INTRODUCTION

Through its Petition, PRUITT attempts to transform individual remedies given by EPA to facilities in Wyoming into a broader attack on EPA and the Renewable Fuel Standard (RFS) program.  Numerous jurisdictional doctrines and venue provisions preclude such an effort.

As an initial matter, PRUITT has failed to establish its standing to mount the challenge it seeks.  PRUITT had to present evidence that it was or certainly would be harmed by EPA's actions.  Instead, PRUITT provided only speculation.  PRUITT discusses market trends under the RFS and asserts that certain actions have had a market-wide effect.  But it never ties any of those effects to the particular EPA actions under review.  It fails to explain how any particular member suffered a distinct and identifiable injury from EPA's decisions, or how a member will face a certainly impending injury.  For all its allegations of market impacts and suffering of PRUITT members, PRUITT ignores the fundamental principle that "[s]tanding is not 'an ingenious academic exercise in the conceivable,' but … requires … a factual showing of perceptible harm."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566 (1992).

Even apart from standing, PRUITT faces several jurisdictional defects.  Its Petition failed to identify the final agency action it seeks to challenge, and any challenge to the agency action that EPA and PRUITT now assume is at issue is

untimely.  A party challenging EPA action must do so within sixty days, but PRUITT filed its Petition well after that time period for the rulemakings identified in its brief.  Nor can PRUITT claim any grounds-arising-after basis for ignoring the express timing limitations of the Clean Air Act.  Nothing that PRUITT challenges signifies a legal change; at most, PRUITT challenges the discrete application of existing statutory and regulatory provisions.  Critically, to the extent PRUITT challenges anything, it challenges particular small-refinery exemptions for facilities in Wyoming.  Those individual exemptions are not nationwide in scope, so any challenge to them cannot be heard in this Court.  As locally or regionally applicable actions, they may be challenged only in the Tenth Circuit.

Even if this Court were to reach the merits, PRUITT's claims that EPA has acted illegally fare no better.  In its exemption decisions, EPA provided a unique remedy to individual facilities on remand from the Tenth Circuit and in light of delays caused by litigation.  EPA's discretionary authority to administer a program is at its height when issuing a remedy.  It was appropriate for EPA to do so through informal adjudications affecting only the facilities facing these unique circumstances, and nothing in EPA's decision could be considered arbitrary or capricious.

The Court should dismiss the Petition or, in the alternative, deny it.

## STATUTES AND REGULATIONS

Except for 40 C.F.R. §§ 80.1451-80.1452, the Briefs for Petitioner and

Respondent contain all applicable statutes and regulations.

## STATEMENT OF THE CASE

I.    **Statutory and Regulatory Framework**

    A.    **Congress's Enactment of the Renewable Fuel Standard Program and Instruction to EPA to Oversee It**

Congress created the RFS Program in section 211 of the Clean Air Act, 42

U.S.C. § 7545(o).  The RFS Program principally requires obligated parties, among

other things, to blend certain renewable fuels into their transportation fuels.  42

U.S.C. § 7545(o).

Under the RFS Program, Congress sets annual targets for the nationwide

volume of renewable fuel to be blended by obligated parties.  EPA ultimately

determines the annual obligation for each year as a percentage standard, and

codifies the standards in its regulations.  40 C.F.R. § 80.1405.  The percentages

represent the ratio of renewable fuel volume to projected non-renewable gasoline

and diesel volume, and they are applied to each obligated party to determine

individual RFS obligations.  40 C.F.R. § 80.1407.  The renewable volume

requirements are predictive and, because they are set in terms of a percentage, they

vary as a result of the amount of fuel produced or imported.  Thus, an actual annual

obligation (in terms of actual gallons of renewable fuel rather than a percentage standard) cannot be calculated until the completion of a calendar year.

To comply with the RFS, an obligated party need not blend renewable fuel itself. Instead, it may obtain credits from others that blended more fuel than their obligation required. These credits are termed renewable identification numbers, or RINs, and are generated for each gallon of renewable fuel produced for use in the United States. *See* 40 C.F.R. § 80.1426(a). The RIN is separated from the renewable fuel once that renewable fuel is blended into transportation fuel or exported. *Id.* §§ 80.1426(e), 80.1429(b). The RIN-separating party may elect to keep the RIN to satisfy its own obligation, or to sell it. 42 U.S.C. § 7545(o)(5)(B)-(C); 40 C.F.R. §§ 80.1427(a)(6), 80.1451. At the end of the compliance year, each obligated party must demonstrate its compliance with the RFS Program by "retiring" RINs sufficient to meet its individual obligation. *Id.* § 80.1427(a)(1).[1]

## B. Congress's Built-In Protections for Small Refineries

In enacting the RFS Program, Congress recognized that small refineries—those with an average annual throughput of 75,000 barrels per day or crude oil or less—may face far greater difficulty complying with the program than other obligated parties. *See* 42 U.S.C. §§ 7545(o)(1)(K), 7545(o)(9). Small refineries

---

[1] Each RIN has a unique number that represents various facets about its creation. 40 C.F.R. § 80.1425. EPA's Moderated Transaction System tracks RINs. *Id.* § 80.1452.

have less capacity to blend renewable fuels and so may experience a disproportionate need to purchase credits from others in order to meet their RIN obligations. *Cf. Hermes Consol. LLC v. EPA*, 787 F.3d 568, 572 (D.C. Cir. 2015).

To ease the burden on small refineries, Congress established a three-tier "exemption" process. First, Congress exempted all small refineries from the RFS Program's obligations through 2010. *See* 42 U.S.C. § 7545(o)(9)(A)(i). Second, Congress directed the Department of Energy to study the economic burden that compliance with the RFS Program would impose on small refineries. *Id.* § 7545(o)(9)(A)(ii)(I). Specifically, Congress instructed the DOE "to determine whether compliance … would impose a disproportionate economic hardship on small refineries." *Id.* If a small refinery would face such a hardship under DOE's study, EPA was required to extend the exemption to that refinery for at least another two years. *Id.* § 7545(o)(9)(A)(ii)(II). Third, and most relevant here, Congress authorized EPA to grant an exemption to a small refinery "at any time … for the reason of disproportionate economic hardship." *Id.* § 7545(o)(9)(B)(i).

Generally, EPA grants individual hardship exemptions in one-year periods. Most exemption decisions are issued at the end of or after the compliance deadline for a given year because EPA requires the small refinery to demonstrate economic hardship by submitting financial information from at least the first three quarters of the compliance year. *See* EPA, Financial and Other Information to Be Submitted

5

With 2016 RFS Small Refinery Hardship Exemption Requests (Dec. 6, 2016),

https://www.epa.gov/sites/production/files/2016-12/documents/rfs-small-refinery-

2016-12-06.pdf.  If EPA grants an exemption after the March 31 compliance

deadline, it affords the small refinery requisite relief by unretiring any RINs that

the refinery previously retired during the compliance year for which it is later

exempted.  *See* Decl., EPA Opp. to Stay Motion, Doc. Nos. 1762681 (public) &

1762885 (sealed), ¶¶ 11-13.

## II.     Factual Background

### A.     EPA's Administration of the RFS Program

As directed by Congress, EPA has administered the RFS Program by,

among other things, promulgating various regulations governing the operation and

administration of that program.  This includes rules promulgated in 2010, 75 Fed.

Reg. 14,670 (Mar. 26, 2010) (codified at 40 C.F.R. § 80.1441) (JA681-95), as well

as annual fuel volumes set for 2014-2018, 82 Fed. Reg. 58,486 (Dec. 12, 2017)

(JA804-09); 81 Fed. Reg. 89,746 (Dec. 12, 2016) (JA796-800); 80 Fed. Reg.

77,420 (Dec. 14, 2015) (JA744-50).

### B.     EPA's Remedy to Sinclair and HollyFrontier on Remands from the Tenth Circuit

Sinclair Casper Refining Company (SCR), Sinclair Wyoming Refining

Company (SWR, and collectively with SCR, Sinclair), and HollyFrontier

Cheyenne Refining, LLC (HollyFrontier) are small refineries under 42 U.S.C.

§ 7545(o)(1)(K).  Faced with various adverse economic conditions that made

complying with the RFS Program a disproportionate economic hardship, each of

these small refineries sought hardship exemptions.

SCR petitioned EPA for a small-refinery exemption for its 2014 RFS

obligation.  *See* Decl., EPA Opp. to Stay Motion, Doc. Nos. 1762681 (public) &

1762885 (sealed), Attach. A (JA904-10).  SWR also sought a 2014 exemption.  *Id.*,

Attach. C (JA919-25).  EPA denied Sinclair's petitions on May 2, 2016.  *Id.*,

Attach. A, C (JA904-10, 919-25).

Both Sinclair facilities further sought exemptions for 2015.  *See id.*, Attach.

B, D (JA911-18, 926-33).  Additionally, HollyFrontier Refining and Marketing,

LLC petitioned EPA for a 2015 exemption for HollyFrontier's Cheyenne refinery.

*Id.*, Attach. E (JA934-41).  EPA denied Sinclair's petitions on October 19, 2016,

and HollyFrontier's on November 3, 2016.

HollyFrontier and Sinclair each petitioned the Tenth Circuit for review of

EPA's denials.  *Id.*, Attach. A-E (JA904-41).  In *Sinclair Wyoming Refining

Company v. EPA*, the Tenth Circuit held that EPA, in the context of denying

Sinclair's petitions for 2014, had interpreted "disproportionate economic hardship"

too stringently by requiring refineries to demonstrate an existential threat to their

viability.  *See* 887 F.3d 986, 999 (10th Cir. 2017).  This standard violated the plain

meaning of the statute.  *See id.*  Consequently, the Tenth Circuit vacated and

remanded EPA's decisions denying Sinclair's 2014 petitions.  Doc. 1762885,

Attach. A, C (JA906, JA921).  Because EPA denied Sinclair's and HollyFrontier's

2015 small-refinery exemption petitions on the same ground, the Tenth Circuit

vacated and remanded EPA's decisions denying those petitions.  *Id.*, Attach. B, D-

E (JA913, JA928, JA936).

### C.    EPA's Grants of Exemptions on Remand

On remand from the Tenth Circuit, EPA applied a different standard and

concluded that Sinclair and HollyFrontier were entitled to the small-refinery

exemption.  *See id.*, Attach. A-E (JA906, JA913, JA921, JA928, JA936).  EPA

agreed that Sinclair's and HollyFrontier's exemption petitions "



" which can include "

" *E.g.*, *id.*, Attach. A (JA907).  It further explained that adverse

structural conditions can include "

" *Id.*  EPA found "

" existed for each refinery.  *Id.*

Having determined that the refineries deserved exemptions, EPA turned to

the appropriate remedy.  EPA recognized that Sinclair and HollyFrontier requested

exemptions "                          " *Id.* (JA908)  However, EPA's improper standard

and the ensuing litigation would render 2015 RINs worthless.  *Id.*  That is, each

facility had accumulated sufficient RINs to meet its 2014 and/or 2015 obligations, but if EPA had simply returned those retired RINs, they would have been "███████" because they could not be used. *Id.* The agency recognized that it needed to find another way to provide an adequate remedy.

Accordingly, EPA used its "████████████████████████ ███████████████████████" *Id.* It did so by striving to "███████████ █████████████████████" had the exemptions been issued before *Sinclair*. *Id.* In other words, EPA utilized its discretion "████ ███████████████████████████████ █████████████████████████" *Id.* (citing *Shays v. FEC*, 528 F.3d 914, 9330 (D.C. Cir. 2008)). Thus, it would "████ ███████████████████████████████ ████████████████████" *Id.* To accomplish this, EPA would enable Sinclair and HollyFrontier to obtain "████████████ ███████████████████████ █████████████████████" *Id.*

Hardship petitions rely on confidential business information, and therefore, under EPA regulations, EPA could not disclose its decisions publicly. *See* 40 C.F.R. part 2, subpart B; *see also Sinclair*, 887 F.3d at 999.

## SUMMARY OF THE ARGUMENT

The Court lacks jurisdiction to entertain PRUITT's Petition.  At the outset, PRUITT lacks standing, because it has not demonstrated with evidence that it or any of its members have been, or will be, harmed by EPA's decisions.  Its theory of standing relies on unsubstantiated allegations and conjecture.

The Petition furthermore improperly challenges general policies without identifying specific final agency action.  And PRUITT did not contemporaneously file any documents that could cure this lack of specificity.  EPA's assumption that PRUITT challenges the informal adjudication decisions EPA lodged in the record does not cure the Petition's jurisdictional defect.

PRUITT's challenge is also untimely.  The Clean Air Act provides a 60-day limitation period to challenge agency action.  42 U.S.C. § 7607(b)(1).  PRUITT's challenge to years-old EPA rulemakings is untimely under this standard, and PRUITT does not present valid grounds arising after to permit jurisdiction.  Its assertion that EPA's grant of "retroactive" exemptions changes the law fails to account for EPA's historical practices, rules stating that EPA would grant such exemptions, and the statutory text allowing small refineries to petition for exemptions "at any time."  *Id.* § 7545(o)(9).

To the extent these jurisdictional hurdles are met, PRUITT's challenge failed to satisfy the procedural requirements for bringing a case based on "grounds

arising after," because EPA has not yet resolved a pending petition for reconsideration that PRUITT filed the same day as it petitioned this Court for review.

Finally, even if this Court could get past these jurisdictional defects, it would be the wrong court to hear the merits. The Petition challenges EPA's remedy at the end of an informal adjudication. The remedy affects three small refineries in Wyoming. Thus, EPA's final action is "locally or regionally applicable" and, therefore, "may be filed only in the United States Court of Appeals for the appropriate circuit." *Id.* § 7607(b)(1). Here, that court would be the Tenth Circuit.

On the merits, the issue before the Court is whether EPA acted within its discretion when it crafted this limited remedy for three small refineries. Agencies may determine policy through informal adjudication. *See Shays*, 528 F.3d at 930. When they do so to issue remedies, their discretion is at its peak. *Niagara Mohawk Power Corp. v. Fed. Power Comm'n*, 379 F.2d 153, 159 (D.C. Cir. 1967). EPA was well within its discretion when, having caused the refineries to retire credits unnecessarily several years prior, it replaced those refineries' credits to make them whole. PRUITT's mischaracterizations of EPA's decisions should not detract from the simple reality of this case: EPA's actions fell within its discretion to manage the RFS Program.

# ARGUMENT

## I.    This Court Lacks Jurisdiction over the Petition.

PRUITT attempts to challenge various agency actions, including a regulation promulgated in 2010, the annual fuel volumes set in 2014-2016, and five informal adjudications decided in December 2017 and January 2018.  The Court lacks jurisdiction over any of these challenges.  As an initial matter, PRUITT has not establish its standing.  *See infra* I.A.  And its Petition challenges general policies without properly identifying final agency action it now purports to challenge.  *See infra* I.B.

Even if PRUITT had standing or had identified final agency action, its Petition is untimely.  On one hand, PRUITT did not file its Petition within 60 days of the rulemakings it seeks to challenge, and PRUITT seeks review with no grounds-arising-after basis.  *See infra* I.C.  On the other hand, if PRUITT asserts that EPA amended its regulations through informal adjudication, the Court must hold the Petition in abeyance until EPA acts on PRUITT's petition for reconsideration.  *See infra* I.D.

Finally, the Court lacks jurisdiction over the individual adjudications because PRUITT has petitioned the wrong court.  Venue, to the extent it lies anywhere, lies in the Tenth Circuit, not this Court.  *See infra* I.E.

### A.    PRUITT Has Failed to Establish Standing.

PRUITT bears the burden of establishing standing and, therefore, the

Court's jurisdiction.  *See Air Alliance Houston v. EPA*, 906 F.3d 1049, 1057-58

(D.C. Cir. 2018).  PRUITT's theory of standing is that EPA's actions "have

reduced the need" for obligated parties "to purchase physical gallons of biofuel to

meet the RFS."  Pet. Br. 18.  According to PRUITT, this has consequences:

because PRUITT's members "have relied on the volumes set by EPA," reduced

need means PRUITT's members "have lost sales, lost value for their product under

previously entered contracts, lost customers, and, in some cases, have had to strand

investments, as a result of EPA's actions and lost demand."  *Id.*  In addition,

PRUITT asserts that "EPA's actions also reduced RIN prices."  *Id.*

PRUITT has not substantiated the basic elements of standing:  (1) that its

members have "suffered an 'injury in fact,' (2) that the injury is 'fairly traceable'

to the challenged action of the defendant, and (3) that it is 'likely, as opposed to

merely speculative, that the injury will be redressed by a favorable decision.'"

*Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) (quoting *Lujan*,

504 U.S. at 560-61).

*First*, PRUITT has not demonstrated through record or other evidence that it

or any of its members has suffered any concrete, particularized injury from EPA's

decision to replace the RINs Sinclair or HollyFrontier retired to comply with

obligations for which they were exempt. *See, e.g.*, *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006); *Sierra Club v. EPA*, 292 F.3d 895, 899 (D.C. Cir. 2002) (petitioner "must either identify … record evidence sufficient to support its standing to seek review or, if there is none because standing was not an issue before the agency, submit additional evidence to the court of appeals"); *see also Warth v. Seldin*, 422 U.S. 490, 511 (1975).

PRUITT speculates that EPA's issuance of replacement RINs has dramatically affected the market by decreasing demand for and prices of renewable fuels and RINs. Notably, however, PRUITT never ties this allegation to the individual determinations for Sinclair or HollyFrontier, offering instead no more than a broad, macro analysis of the RIN market. *See* Pet. Br. 17-18; Pet. Br. Addendum, Cain Decl. ¶¶ 16-17, 31; *see generally* Pet. Motion for Prot. Order, Doc. Nos. 1759744 (public) & 1759893 (sealed), DeAngelis Decl.[2] PRUITT fails to identify any basis for attributing market-wide fluctuations in RIN prices to the limited number of replacement RINs EPA issued to Sinclair and HollyFrontier. *Lujan*, 504 U.S. at 566 ("Standing is not 'an ingenious academic exercise in the conceivable,' but … requires … a factual showing of perceptible harm.").

---

[2] PRUITT obliquely refers to this declaration. Pet. Br. 18 n.24. Far from using this declaration to show how at least one of PRUITT's members has suffered cognizable harm as a result of EPA's decisions, the declaration merely repeats arguments PRUITT has made elsewhere. This lack of specific detail deprives the declaration of any value for determining standing.

Actual data about renewable fuel production belies PRUITT's arguments about demand for renewable fuels dropping.  Contrary to PRUITT's claims that the exemptions are diminishing the market for renewable fuels, ethanol and biodiesel sales have increased even when EPA has granted more exemptions than in previous years.  Indeed, biomass-based diesel production *increased* in 2018 from 2017, exceeding the statutory mandate.  *See* U.S. Energy Info. Admin., Monthly Biodiesel Production Report, Table 1 (showing monthly production volumes for 2016, 2017, and 2018), https://www.eia.gov/biofuels/biodiesel/production/ biodiesel.pdf.  Notably, over the last few years, the actual regulatory compliance obligations under the RFS were achieved.  *See* Annual Compliance Data for Obligated Parties and Renewable Fuel Exporters under the Renewable Fuel Standard (RFS) Program, *available at* https://www.epa.gov/fuels-registration-reporting-and-compliance-help/annual-compliance-data-obligated-parties-and.  For example, in the 2017 compliance year EPA calculated the actual volume obligation to be 18.9 billion RINs,[3] renewable fuel producers generated 19.4 billion RINs,[4] and 19.3 billion RINs were separated.[5]  That means more than 400 million RINs'

---

[3] *See* EPA, Annual Compliance Data, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/annual-compliance-data-obligated-parties-and.

[4] *See* EPA, RINs Generated Transactions, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rins-generated-transactions

[5] *See* EPA, RIN Use, https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rin-use

worth of renewable fuel was produced (RINs generated) and blended or consumed (RINs separated) than necessary to fulfill the mandatory renewable volume obligation.

PRUITT also fails to consider alternative economic forces as a cause of their alleged injury.  Supply and demand for transportation fuels, renewable fuel, and RINs can be influenced by a host of factors, such as trade policies, consumer demand, and overall renewable fuel production.  *See, e.g.*, James H. Stock, *The Renewable Fuel Standard:  A Path Forward*, Center for Global Energy Policy 16 (Apr. 2015), EPA-HQ-OAR-2015-0111-2603-Ex. B (JA772).  For example, in 2016 and 2017, fuel consumption fell short of the EIA predictions used to set the standards for those years—approximately 4.6 and 10.2 billion gallons, respectively, which would decrease the renewable fuel volume required to comply with the annual obligation.[6]  PRUITT simply assumes without proof ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in 2018 were attributable to EPA's RIN replacements, and no other cause.  Doc. Nos. 1759744 (public) & 1759893 (sealed), DeAngelis Decl. ¶ 16; Pet. Br. Addendum, Cain Decl. ¶¶ 23, 26.

---

[6] *See* Table 1: Estimated versus Actual Gasoline and Diesel Volume Produced for Domestic Use (https://www.epa.gov/fuels-registration-reporting-and-compliance-help/annual-compliance-data-obligated-parties-and).

In light of this data, PRUITT unsurprisingly does not establish with hard evidence that the drop in demand and prices for renewable fuel in 2018 is linked to EPA's actions.  *See Sierra Club*, 292 F.3d at 898-99.

*Second*, PRUITT similarly fails to establish standing based on the possible further effect of any action.  PRUITT's standing rests on sweeping statements like: "EPA's complete lack of transparency, [which] make[s] it impossible for biofuel producers to predict the actual … demand they will face going forward…."  Pet. Br. Addendum, Cain Decl. ¶ 32.  This "theory of *future* injury is too speculative to satisfy the well-established requirement that threatened injury must be 'certainly impending'" or that it is "fairly traceable" to EPA's decisions.  *Clapper*, 568 U.S. at 401-02; *see also Summers v. Earth Island Inst.*, 555 U.S. 488 (2009).  PRUITT has offered nothing beyond mere speculation to suggest that EPA will continue to grant so-called retroactive exemptions or allow refineries to replace prior-year RINs.

In the end, PRUITT cannot claim entitlement to more renewable fuel sales or demand for RINs than required by statute or regulation.  There are billions of excess RINs on the market that HollyFrontier or Sinclair could have used to satisfy their annual volume obligations had EPA not granted the remedy it did.  PRUITT has not shown that EPA's actions deprived it or any member of value they would have received or that these actions will certainly do so in the future.

**B.** **PRUITT's Petition Failed to Identify Final Agency Actions Related to Its Key Claims.**

EPA has assumed that PRUITT's Petition adequately identified final agency actions, but the Petition itself does not identify the final agency action it seeks to challenge. Accordingly, this Court lacks subject-matter jurisdiction. *See Indep. Equip. Dealers Ass'n v. EPA*, 372 F.3d 420, 428 (D.C. Cir. 2004). PRUITT merely challenges, among other things, EPA's "decision to allow the generation of [RINs] by obligated parties" under the RFS Program "that do not represent biofuel production the year the RIN was generated." Pet. for Review, Doc. No. 1743716, at 1. This is nothing more than a challenge to a general EPA policy underlying the exemption decision, as opposed to a challenge to a final action. *See Indep. Equip. Dealers Ass'n*, 372 F.3d at 428.

"The federal courts are not authorized to review agency policy choices in the abstract." *Fund for Animals, Inc. v. U.S. Bureau of Land Mgmt.*, 460 F.3d 13, 18 (D.C. Cir. 2006). Rather, "before there may be judicial review there must be a 'discrete' 'agency action.'" *Id.* at 21 (citation omitted). PRUITT's Petition fails to identify those discrete agency actions. Indeed, it names neither Sinclair nor HollyFrontier as beneficiaries of EPA's decision to replace RINs, and otherwise fails to "specify the order" to be reviewed. Fed. R. App. P. 15(a)(2)(C).

In PRUITT's defense against EPA's Motion to Dismiss, it suggests there is no jurisdictional problem if the Court can "fairly infer" the actions for which it

18

seeks review.  Doc. No. 1765326, at 2.  The case it cites for this proposition,

*LaRouche's Comm. for a New Bretton Woods v. FCC*, 439 F.3d 733, 739 (D.C.

Cir. 2006), recognized that "contemporaneous filings," such as motions or

statements of issues, *may* cure an otherwise defective petitions.  But here, no such

contemporaneously filed material could perform that curative role.  *See Am. Rivers*

*v. FERC*, 895 F.3d 32, 44 (D.C. Cir. 2018) (inferring "intent to seek review" where

a motion, docketing statement, statement of issues, and underlying decisions were

"attached to the appeal").  PRUITT did not file its Docketing Statement or

Statement of Issues until November 13, 2018, nearly three-and-a-half months after

it filed its Petition.  That is not a contemporaneous filing.  *See Entravision*

*Holdings, LLC v. FCC*, 202 F.3d 311, 314 (D.C. Cir. 2000) (describing as "nearly

contemporaneous" documents filed within a month of the petition for review).

PRUITT should not be allowed to go on a fishing expedition, filing a

deficient Petition and permitting the course of litigation to cure any deficiencies.

### C.     PRUITT's Challenge Is Untimely.

Even if PRUITT could establish standing or an adequate petition for review,

the Court nevertheless lacks jurisdiction over PRUITT's challenge to prior

rulemakings because its Petition was untimely.  A party challenging EPA action

must do so within sixty days.  42 U.S.C. § 7607(b)(1); *Harrison v. PPG Indus.*,

446 U.S. 578, 587 (1980).  The four rulemakings PRUITT challenges were

published in 2010, 2015, 2016, and 2017, making PRUITT's Petition untimely.  42

U.S.C. § 7607(b)(1).[7]

PRUITT cannot premise jurisdiction on the basis of a petition that is "based

solely on grounds arising after" the 60-day period for seeking judicial review.  *Id.*

To establish valid grounds arising after, courts look for "subsequent factual or legal

development" that has created "new legal consequences for petitioner."  *Sierra*

*Club v. EPA*, 815 F.3d 22, 27-28 (D.C. Cir. 2016).  PRUITT raises concerns about

the number of exemptions, an increase in RINs, the granting of retroactive

exemptions, and similar issues.  Pet. Br. 38-41.  But these are not grounds arising

after because the regulated community had notice of EPA's interpretation of its

authority regarding small refinery exemptions *and* the biofuels community

provided comment on the claims it now makes, very belatedly, in this Court.  The

issues that PRUITT raises here do not create any "new legal consequences" for

PRUITT that did not exist years ago.  *Id.*  In effect, PRUITT's challenge amounts

---

[7] PRUITT's challenge to HollyFrontier's exemption decision is also untimely.  The decision was signed on January 24, 2018.  *See* Proposed Respondent-Intervenors' Resp. in Opp. to Pet. Motion for Stay, Doc. No. 1762811 (public), 1762976 (sealed), Ex. A, Taylor Decl. ¶ 6.  The Clean Air Act has no discovery rule, but even if it did, HollyFrontier publicly disclosed that EPA replaced the refinery's RINs.  *Id.*  It did so in a Form 10-Q report on May 2, 2018, which was ninety days before PRUITT filed its petition.  PRUITT's challenge to this decision cannot be timely under 42 U.S.C. § 7607(b)(1).

to a complaint about the "*application* of the Rule not the Rule itself." *See Nat'l Biodiesel Bd. v. EPA*, 843 F.3d 1010, 1017 (D.C. Cir. 2016).

> EPA first explained in 2010 that it

> *may* extend the exemption for individual small refineries on a case-by-case basis if they demonstrate disproportionate economic hardship. If any small refinery exemptions for 2011 are approved after this final rulemaking, the parties in question would be exempt but we would not intend to modify the applicable percentage standards and announce new standards for 2011. EPA believes the Act is best interpreted to require issuance of a single annual standard in November that is applicable in the following calendar year, thereby providing advance notice and certainty to obligated parties regarding their regulatory requirements. Periodic revisions to the standards to reflect waivers issued to small refineries or refiners would be inconsistent with the statutory text, and would introduce an undesirable level of uncertainty for obligated parties.

75 Fed. Reg. 76,790, 76,804 (Dec. 9, 2010) (emphasis added) (JA708). PRUITT claims EPA "[m]erely referenc[ed] the possibility that EPA may grant exemptions after the standards are set." Pet. Br. 25. But the only "possibility" was that no small refineries would be granted exemptions. EPA's position that it can—and would where disproportionate economic hardship exists—grant exemptions "at any time" was clear. This statement also provided ample notice that EPA would not account for exempted small refineries' RIN requirements by revising the annual renewable fuel volumes or percentage standards.

EPA reiterated this interpretation in its 2012 proposed rule, and it further explained that a few refineries that satisfactorily demonstrated disproportionate economic hardship prior to EPA issuing the proposed rule and that the

gasoline and diesel volumes of those refineries have been appropriately accounted for in the development of the proposed standards. If additional individual refinery requests for exemptions are approved following the release of this NPRM, the final standards will be adjusted to account for those exempted volumes of gasoline and diesel. However, any requests for exemptions that are approved after the release of the final 2012 RFS standards will not affect the 2012 standards.... Thus, after the 2012 standards are finalized, any additional exemptions issued will not affect those standards.

76 Fed. Reg. 38,844, 38,859 (July 1, 2011) (JA713); *accord* 82 Fed. Reg. 58,486,

58,523 (Dec. 12, 2017) ("EPA is *maintaining its approach* that any exemptions for

2018 that are granted after the final rule is released will not be reflected in the

percentage standards that apply to all gasoline and diesel produced or imported in

2018." (emphasis added)) (JA805).

Not only was EPA's position clear, biofuels producers commented on these

issues. They asked EPA to set a deadline for small refineries to seek exemptions;

to provide an opportunity for public comment on exemption requests prior to

finalizing the annual rule; and to see that volumes from exempt refineries are

"made up" later. Comments of Renewable Fuels Association at 6-8 (Aug. 11,

2011), EPA-HQ-OAR-2010-0133-0163 (JA730-32); Comments of National

Biodiesel Board at 8-10 (Aug. 11, 2011), EPA-HQ-OAR-2010-0133-0159 (JA726-

28). EPA maintained this approach in the final rule for 2012. 77 Fed. Reg. 1,320,

1,340 (Jan. 9, 2012) (JA719). Biofuels producers also raised concerns that EPA

treated small refinery exemptions as impermissible waivers of the statutory

volumes; that the statute does not allow EPA to grant small refinery exemptions to refineries that have not been continuously exempt; that EPA cannot grant exemptions mid-year (*i.e.*, after the compliance deadline); and that EPA should grant small refinery exemptions prospectively only. Nat'l Biodiesel Bd. Comments at 9-10 (JA727-28). Despite these concerns, no biofuels producer sought judicial review of the final 2012 rule. PRUITT cannot now complain that "the biofuels industry could not have been aware" of EPA's interpretation of the statute, Pet. Br. 43, and it is not enough for PRUITT to have failed to anticipate the "scope and impact" of EPA's approach to small refinery exemptions. *Id.* at 38.

Contrary to PRUITT's contentions, Pet. Br. 37-41, EPA is not altering its regulations by allowing "retroactive exemptions." Reading the statute "as a whole," Pet. Br. 28, does not change the fact that the statute specifically allows EPA to grant hardship petitions "at any time." 42 U.S.C. § 7545(o)(9)(B)(i). On its face, the phrase "at any time" has no ambiguity, and, in this context, is not limited to prospective decisions. In fact, the statute uses the same phrase two other times, each of which has a specific time period attached to it. *Id.* § 7545(o)(1)(I)(i)-(ii). If Congress had also wanted to limit the time for hardship petitions in the same way, it could have. But "Congress' choice of words is presumed to be deliberate." *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 353 (2013). Even if "at any time" were unclear, EPA's interpretation that the

phrase authorizes it to grant small refinery exemptions after the annual rule is finalized or after the compliance deadline is reasonable.  Congress established disproportionate economic hardship exemptions to protect small refineries.  It clearly intended for those refineries to seek relief "at any time."  Interpreting the statute to preclude EPA from providing relief in response to exemption petitions filed "at any time" does violence to the plain language of the statute.  And if PRUITT or its members desired to challenge EPA's incorporation of the same phrase in its regulations, 40 C.F.R. § 80.1441, they could have.  EPA's discretion to act under these provisions has not changed since they were enacted, so EPA's actions under them do not constitute a legal change.

The agency action here did not amount to a reinterpretation of the RFS or its administration.  EPA need not promulgate rules to cover every conceivable issue. *Shays*, 528 F.3d at 930.  And here, EPA merely resolved individual hardship petitions for particular small refineries and, appropriately for an informal adjudication provided a specific remedy limited to discrete parties.  *See id*.

PRUITT's Petition is untimely, and the Court therefore lacks jurisdiction.[8]

---

[8] Neither does this Court have jurisdiction under the reopener doctrine.  PRUITT argues that EPA has "significantly altered the stakes of judicial review" by expanding the small refinery exemption program.  Pet. Br. 44 (quoting *Sierra Club v. EPA*, 551 F.3d 1019, 1025-26 (D.C. Cir. 2008)).  EPA's actions on remand from the Tenth Circuit were narrowly tailored to provide appropriate relief to Intervenors, and PRUITT's complaints that the impact of EPA's implementation of its longstanding interpretation of the statute is greater than the biofuels industry

### D.    PRUITT Has Failed to Satisfy the Procedural Requirements for Bringing a Case Based on "Grounds Arising After."

Even if PRUITT could get past these fatal jurisdictional defects, the administrative reconsideration petition it filed with EPA precludes this Court's review.  On the same day PRUITT filed its Petition in this Court, PRUITT separately petitioned EPA under 42 U.S.C. § 7607(d)(7)(B) to reconsider the same agency actions it challenges here.  *See* EPA Opp. to Pet'rs Motion to Supplement Record, Doc. No. 1772829, Ex. A, Petition for Reconsideration.  That petition remains pending.  Consequently, the existence of this parallel procedure precludes this Court's review of the same substantive matters until the agency has ruled on the petition.  *See Utility Air Regulatory Grp. v. EPA*, 744 F.3d 741, 746 (D.C. Cir. 2014).

PRUITT argues that this Court should nonetheless proceed to the merits of the case without affording EPA an opportunity to respond to the reconsideration petition, Pet. Br. 47-49, but PRUITT's arguments are meritless.  Under the very provision that PRUITT invoked, "a party may not raise for judicial review objections to a rule that it raised *for the first time* in a petition for agency reconsideration—at least until that petition is resolved."  *Utility Air Regulatory*

---

anticipated are not sufficient to reopen EPA's rulemakings.  *Nat'l Biodiesel Bd.*, 843 F.3d at 1017 (no grounds arising after exist where "the basic regulatory scheme remains unchanged") (internal quotations omitted).

*Grp.*, 744 F.3d at 746 (applying 42 U.S.C. § 7607(b)(1)).  A petitioner may seek judicial review only if "an objection to a rule or procedure … was raised with reasonable specificity during the period for public comment."  42 U.S.C. § 7607(d)(7)(B).

Here, PRUITT contends that EPA's actions are "new grounds" supporting judicial review.  Pet. Br. 48.  But it does not identify any "objection … raised with reasonable specificity" that would remove it from § 7607(d)(7)(B)'s bar.  Indeed, in its brief, PRUITT acknowledges that EPA's policy was not to readjust the volume targets to account for exemptions granted after the annual volume obligation is set.  Pet. Br. 37-38.  PRUITT's protest that it could not have foreseen the scope of exemptions EPA might grant falls short.  As discussed above, *supra* I.C.2, the renewable fuels industry did submit comments on EPA's policy.  If the industry was concerned about the number of exemptions EPA might grant after setting the volume obligation, it should have challenged EPA's determination.  Because it did not do so, PRUITT may not excuse § 7607(d)(7)(B)'s requirement here.  EPA must resolve the petition for reconsideration before the Court may entertain PRUITT's petition for review.

In any event, allowing EPA to complete its reconsideration before this Court reviews PRUTT's challenge would allow the Court to have "a record to evaluate complex regulatory issues."  *ExxonMobil Oil Corp. v. FERC*, 487 F.3d 945, 962

(D.C. Cir. 2007). This Court's review "is likely to stand on much surer footing" if it comes after the agency has had the opportunity to apply the relevant standards to the particular facts. *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 163-64 (1967); *see also, e.g.*, *Etelson v. OPM*, 684 F.2d 918, 928 (D.C. Cir. 1982) (remanding for the agency to "apply[] its expertise and discretion" to a question not answered by the extant record). Allowing EPA to respond to PRUITT's arguments in the regulatory context is particularly appropriate here, where PRUITT has asked the Court to declare that EPA has made wholesale changes to its administration of the RFS through an informal adjudication. *See Oljato Chapter of Navajo Tribe v. Train*, 515 F.2d 654, 666 (D.C. Cir. 1975). Contrary to PRUITT's arguments, EPA's letters to Senator Grassley and Representative Loebsack do not satisfy the purposes of seeking reconsideration. Pet. Br. 47-48; Pet. Opp. to Motion to Dismiss, Doc. No. 1764330, Exs. C, E (JA836-37, JA846-47). EPA's discussion of exemption decisions in a public letter is not the same as allowing it to provide a reasoned response to a petitioner's arguments, particularly where, as here, the decision intrinsically relies on confidential business information.

At a minimum, this Court should hold the petition for review until EPA fully considers PRUITT's arguments and produces a complete record to assist this Court in its consideration.[9]

### E.    PRUITT's Challenge Is in the Wrong Court.

Even if PRUITT's Petition were construed to challenge the individual adjudications involving Sinclair and HollyFrontier, this Court lacks jurisdiction over that element of PRUITT's case.  A challenge to EPA's decisions on remand from the Tenth Circuit belongs in that Court, not this one.  Challenges to a "locally or regionally applicable" final action "may be filed only in the United States Court of Appeals for the appropriate circuit."  42 U.S.C. § 7607(b)(1).  Venue in this Court is proper only if EPA's action is "nationally applicable."  *Id.*  "To determine whether a final action is nationally applicable, 'this Court need look only to the face of the rulemaking, rather than to its practical effects.'"  *Dalton Trucking, Inc. v. EPA*, 808 F.3d 875, 881 (D.C. Cir. 2015) (quoting *Am. Rd. & Transp. Builders Ass'n v. EPA*, 705 F.3d 453, 456 (D.C. Cir. 2013)).

EPA's RIN-replacement decisions were part of the actions the agency took to address the court's remand from *Sinclair*, where the Tenth Circuit held that EPA had wrongfully denied the hardship exemptions.  887 F.3d at 999.  By the Tenth

---

[9] Given the numerous jurisdictional defects in PRUITT's case, the Court should not entertain a request to transfer any portion of this case, or hold it in abeyance pending another case.

28

Circuit's characterization, these decisions were inherently local. The court explicitly noted that small refinery decisions were "specific to the parties at issue" and "were resolved on the basis of [the refineries'] submissions." *Id.* at 992. The decisions were not broad-based policies implemented "by the head of the EPA," but were made "instead by a mid-level Agency official." *Id.* Nor do they hold any "precedential value for third parties," or "[i]ndeed … even for the refiner, since *each* petition must be resolved on a *case-by-case basis*." *Id.* (emphasis added). Moreover, third parties cannot even access the decisions, "since the EPA does not publicly release its decisions because they contain confidential business information." *Id.*

Though EPA's decisions on remand reached a different conclusion than before, such an outcome does not change their inherently local applicability. Each decision was a discrete action that applied to a single refinery. And all of the affected small refineries are in Wyoming; none are in Washington, D.C. or serve the D.C. area. *See* Doc. Nos. 1762681 (public) & 1762885 (sealed), Attach. A-E (JA904-41). The face of each underlying decision includes EPA's rationale, which underscores the individual, local nature of EPA's decisions. EPA explained that it needed to account for a lengthy administrative proceeding that—through no fault of the refineries—caused the refineries to retire RINs in 2015 to satisfy obligations that should have been exempted. *Id.* Thus, looking at the "face of the" agency

actions reveals that these actions were no more than the crafting of locally

applicable remedies. *Dalton Trucking*, 808 F.3d at 881.

PRUITT argues that EPA's decision to allow HollyFrontier and Sinclair to

replace RINs amended the national regulations and was felt nationally. Pet. Opp.

to Motion to Dismiss, Doc. No. 1764330, at 4; Pet. Br. 32-35. This is incorrect.

Nothing in EPA's decision amended the existing regulations. Moreover, the

regulations' text is the same today as it was before EPA's decisions, and PRUITT

has not demonstrated that EPA has applied the same relief outside these isolated

decisions. PRUITT also fails to acknowledge that for this Court to have

jurisdiction over the local issues in this matter, the Administrator of EPA must

"find[] and publish[]" that final action has "nationwide scope and effect." 42

U.S.C. § 7607(b)(1). EPA made no such statement. The consequence of

PRUITT's argument would render the venue provisions of the Clean Air Act a

nullity. By PRUITT's logic, any regional decisions could be challenged in this

Court because they would all stem from national regulations. That is inconsistent

with the Clean Air Act and this Court's decisions.

## II.    Even if the Court Has Jurisdiction, EPA Has Properly Administered the RFS Program and Reasonably Provided a Remedy to Intervenors.

### A.    Standard of Review

The Court may not reverse EPA action unless it is "arbitrary, capricious, an

abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2);

Appellate Case: 19-9532    Document: 29-1    Date Filed: 06/27/2019    Page: 45

*see also* 42 U.S.C. § 7607(d)(9)(A).  "[T]he breadth of agency discretion" is at its

"zenith" when it comes to the agency's "fashioning of policies, remedies and

sanctions."  *Niagara Mohawk Power Corp.*, 379 F.2d at 159.

### B.    EPA Has Discretion When It Implements Remedies.

PRUITT does not challenge the merits of EPA's hardship exemption

decisions for Sinclair or HollyFrontier but instead asks the Court to review solely

the propriety of EPA's choice of remedy.  As EPA demonstrates, the remedy is

well within its authority and is a proper exercise of that authority.

Congress granted EPA broad discretion to manage the RFS program.

PRUITT contends that EPA's discretion is limited to benefitting biofuel producers

because that was Congress's sole purpose for enacting the RFS.  *E.g.*, Pet. Br. 24.

But Congress's charge was not so narrow.  Congress wanted to "clos[e] the supply

and demand imbalance ... to ensure the country's continued growth and prosperity

and to protect our national security."[10]  As this Court recognized, EPA plays an

important role in balancing the consumption of renewable fuel with the burdens on

obligated parties to comply with the mandates.  *See Ams. for Clean Energy v. EPA*,

864 F.3d 691, 715 (D.C. Cir. 2017) ("EPA's interpretation also reasonably

balances the need to drive growth in the renewable fuel industry with the need to

---

[10] Committee on Energy and Natural Resources Report for the Energy Policy Act
of 2005, S. Rep. No. 109-78 at 6 (June 9, 2005) (JA654).

ensure that obligated parties have sufficient flexibility to comply with the statute.").  For this reason, it is EPA's longstanding interpretation (which was not challenged in 2012) that it need not "ensure" that the volumes are precisely met. 77 Fed. Reg. at 1,340 (EPA is "not required to ensure that the biofuel volumes in the statute are precisely met.…") (JA719).

The multiple purposes of the RFS are evident from the provisions Congress enacted to protect the domestic fuel industry, including a specific set of provisions to protect small refineries from onerous regulatory burdens.[11]  *See, e.g.*, *Sinclair*, 887 F.3d at 989 ("Congress was aware the RFS Program might disproportionately impact small refineries … and therefore created three classes of exemptions to protect these small refineries.").

As noted above, Congress authorized exemptions for small refineries that would suffer "disproportionate economic hardship" as a result of compliance with the RFS.  42 U.S.C. § 7545(o)(9).  Congress did not define what constitutes such a hardship, and thus left to EPA the discretion to consider various factors, ranging from the Department of Energy's report on the program's burden on small refineries to "other economic factors" affecting a particular small refinery.  *See id.*;

---

[11] Although EPA must "ensure" that the annual volume requirements are met, 42 U.S.C. § 7545(o)(2)(A)(i), it need not "'pursue[] its purposes' of increased renewable fuel generation 'at all costs.'"  *Ams. for Clean Energy*, 864 F.3d at 714 (quoting *Am. Express Co. v. Italian Colors Restaurant*, 133 S. Ct. 2304, 2309 (2013) (alteration in original)).

*see also Hermes Consol.*, 787 F.3d at 577 ("'In the absence of any express or implied statutory directive to consider particular factors,' EPA retains broad discretion to choose which 'economic factors' it will (and will not) consider.'" (quoting *Monroe Energy, LLC v. EPA*, 750 F.3d 909, 915 (D.C. Cir. 2014)).

In adjudicating small refinery petitions, EPA can act without going through notice-and-comment rulemaking. PRUITT contends otherwise, but Congress clearly did not require that *all* EPA action in carrying out the RFS Program be by regulation. Where such requirements are necessary, Congress explicitly identifies them. For example, when EPA considers exercising its general waiver authority, it can act "after public notice and opportunity for comment." 42 U.S.C. § 7545(o)(7)(A)(i). This requirement is noticeably absent from the small refinery exemption provision. *See id.* § 7545(o)(9)(B). This distinction is significant, evincing greater discretion for exemptions. *See Nat'l Biodiesel Bd.*, 843 F.3d at 1017 (holding that EPA reasonably conducted an informal adjudication where regulation did not require notice and comment). Furthermore, hardship exemption petitions are not listed among the rules that are subject to the Clean Air Act's detailed notice-and-comment and other rulemaking procedures. *See* 42 U.S.C. § 7607(d)(1) (listing the rules subject to those procedures).

In the absence of a specific statutory requirement to adjudicate relief for small refinery exemptions, EPA "may perform th[is] administrative function[]" of

managing small-refinery exemptions "both through rulemaking and adjudication."

*See Neustar, Inc. v. FCC*, 857 F.3d 886, 893 (D.C. Cir. 2017). EPA need not

promulgate rules for every eventuality. *See Shays*, 528 F.3d at 930; *see also*

*Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 96 (1995) ("The [Administrative

Procedure Act] does not require that all the specific applications of a rule evolve

by further, more precise rules rather than by adjudication."). Agencies have

discretion to use the informal adjudicatory process as a matter of regulatory

flexibility. *See POM Wonderful, LLC v. FTC*, 777 F.3d 478, 497 (D.C. Cir. 2015)

("[T]he choice between rulemaking and adjudication lies in the first instance

within the agency's discretion.").[12] This discretion is "very broad." *Nat'l*

*Biodiesel Bd.*, 843 F.3d at 1017 (quoting *Qwest Servs. Corp. v. FCC*, 509 F.3d 531,

536 (D.C. Cir. 2007)). In fact, this Court recognized that "'[a]gency discretion …

is … at [its] zenith' when the agency fashions remedies to effectuate the charge

entrusted to it by Congress." *Malta Irr. Dist. v. FERC*, 955 F.2d 59, 65 (D.C. Cir.

1992) (quoting *Columbia Gas Transmission Corp. v. FERC*, 750 F.2d 105, 109

(D.C. Cir. 1984)).

---

[12] EPA's discretion extends to "many of the specialized problems which arise" when administering a complex statute. *SEC v. Chenery Corp.*, 332 U.S. 194, 202 (1947). The Supreme Court has recognized that while "filling in the interstices" of a statute is preferably achieved through rulemaking, "any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing" with every issue that can arise. *Id.*

Here, EPA exercised this discretion and resolved the "highly fact-specific" issue before it with an informal adjudication, as it was permitted to do. *Neustar, Inc.*, 857 F.3d at 893. It faced a novel question: how to further the statute's purpose with regard to particular small refineries entitled to exemptions where the course of regulatory and litigation proceedings would render the most obvious remedies worthless. The relief provided in this situation was perfectly reasonable. By issuing current replacement RINs, EPA put the refineries in as close to a situation as they would have been in had EPA granted the exemptions when the refineries could have used the RINs they unnecessarily retired. EPA's choice to make these decisions through informal adjudication, rather than by public notice-and-comment, was particularly appropriate because the exemption decision and remedy involved sensitive and confidential business information, which EPA was required to protect by law. Such action is similar to that courts deemed reasonable and proper. *See Shays*, 528 F.3d at 930; *POM Wonderful*, 777 F.3d at 497.

## C. The Exemption Decisions Were Consistent with the Law and Neither Arbitrary Nor Capricious.

EPA's remedial decision here was a proper exercise of discretion to replace the limited number of RINs Sinclair and HollyFrontier unnecessarily retired, in light of the delay in the agency's process, up through and including *Sinclair*. In other RFS cases, this Court has recognized EPA's "duty to consider and mitigate

any hardships caused to obligated parties by reason of [regulatory] lateness." *Ams.*

*for Clean Energy*, 864 F.3d at 718.

EPA determined that Sinclair and HollyFrontier were entitled to hardship

exemptions but it could not simply refund the previously retired RINs, as it has

done in the past. Those RINs would have been valid until 2017 at the latest. 40

C.F.R. § 80.1427(a)(6). That would be like an airline compensating a bumped

flyer with a voucher only good for travel in the past. EPA recognized that the

retired RINs '███████████' in the time that it took the refineries to challenge

EPA's denial of their timely exemption petitions. *E.g.*, Doc. Nos. 1762681

(public) & 1762885 (sealed), Decl., Attach. E, at 4 (JA938). '███████████

███████████' by this situation, EPA elected to use its '███████████

███████████' to make the small refineries whole

under the RFS. *Id.* In doing so, it relied specifically on this Court's recognition

that agencies may '███████████' *Id.* (quoting *Shays*,

528 F.3d at 930).

Moreover, the decisions demonstrated EPA's efforts to tailor the remedy to

the existing statutory and regulatory scheme. It authorized Sinclair and

HollyFrontier to replace on a one-for-one basis the retired RINs with 2018 RINs.

In doing so, EPA ensured that each RIN related to a gallon of renewable fuel that

was blended into transportation fuel. The new 2018 RINs were linked directly to

the 2014-2015 RINs to ensure, for example, that any RINs deemed improper from that time period would also be improper now.  Tracking of the linked-together RINs would take place in EPA's Moderated Transaction System.  And, although a retired RIN "cannot be used to demonstrate compliance in any other year," EPA's decision meant that the 2014-2015 RINs that Sinclair and HollyFrontier had submitted had, in effect, no longer been "used to demonstrate compliance" in those years.  40 C.F.R. § 80.1427.

PRUITT argues that the agency violated the statutory and regulatory structure.  Pet. Br. 25-32.  Those arguments are unavailing.  Citing various RFS provisions, PRUITT asserts that the replacement RINs resulted in the improper creation of "invalid" RINs.  But PRUITT ignores the fact that the RFS Program does not contemplate the scenario here, in which litigation and regulatory process delayed the hardship determination until after the RINs had lost their value.  EPA's discretion allowed it to resolve such an interstitial issue, and no regulation prohibited it from replacing RINs in these circumstances.[13]  The replacement RINs are tied explicitly to renewable fuel that has been produced and meet all attributes required under the statute and EPA's regulation.  *See* 42 U.S.C. § 7545(o)(1).  In

---

[13] PRUITT suggests that "the record lacks any relevant information" about the original RINs that EPA replaced.  Pet. Br. 26.  But as EPA described in the Sinclair and HollyFrontier decisions, each replacement RIN tracks the refineries' initial RINs.

37

particular, it was EPA that replaced the RINs; the refineries did not "generate" new RINs independently, as PRUITT implies.[14]  *See, e.g.*, Doc. Nos. 1762681 (public) & 1762885 (sealed), Decl., Attach. E, at 4 (JA938); Pet. Br. 26-27.

PRUITT's challenge to EPA's prior rulemakings also fails.  PRUITT argues that the statute and regulations solely contemplate prospective relief, and that "[i]t makes little sense" to allow a refinery to wait until late in the compliance year, and perhaps even procure sufficient RINs, before seeking its exemption.  Pet. Br. 49-50.  But this argument relies on the assumption that no small refinery faces a disproportionate economic hardship unless it faces a threat to its viability.  The Tenth Circuit rejected that assumption.  *See Sinclair*, 887 F.3d at 996-97.[15]  And, as discussed above, EPA has reasonably and consistently determined that it should not alter the annual volume obligations even if exemptions are granted after the obligation is set.  *See supra* II.C.2.  EPA's regulations thus reasonably permit small

---

[14] PRUITT latches onto EPA's use of the word "generate" in the decisions.  But EPA used the word "generate" in a different sense than the applicable regulations do.  *E.g.*, Decl., Attach. E, at 4 (JA938).  EPA used the word "generate" to describe the process of how the agency would account for the RINs in EPA's Moderated Transaction System.  The RINs themselves were still generated in accordance with all the statutory and regulatory guidelines.

[15] Similarly, Petitioner complains that it "is difficult to see how a small refinery that *could, and even, did* comply would be entitled to a *hardship* exemption."  Pet. Br. 24.  This argument also fails.  Congress authorized EPA to grant small refineries exemptions when they demonstrate "disproportionate economic hardship."  42 U.S.C. § 7545(o)(9).  Inability to comply with the RFS is simply not the test.

refineries to seek exemptions "at any time," and PRUITT seeks to impose a crabbed reading that is inconsistent with the statute and regulations. Contrary to PRUITT's characterizations, EPA did not engage in a wholesale modification of any existing policies. Instead, it used its discretion to craft a limited remedy that accounted for its power under the RFS to protect small refineries from undue economic hardship.

At bottom, EPA's act of discretion ensured that Sinclair and HollyFrontier were not harmed as a result of delay in the administrative process. EPA acted through an informal adjudication to craft individual decisions that took stock of the RFS and ensured that the agency protected certain small refineries. A central purpose of the statute would be undermined by a finding that a small refinery rightly deserved an exemption but lost the benefit of that exemption while pursuing an administrative appeal.

# CONCLUSION

For the foregoing reasons, and those in EPA's brief, the Court should

dismiss the Petition for review, or in the alternative deny it.

Dated:  April 1, 2019

/s/ Jeffrey R. Holmstead
Jeffrey R. Holmstead
Brittany M. Pemberton
BRACEWELL LLP
2001 M Street N.W., Suite 900
Washington, D.C. 20036
(202) 828-5800 (telephone)
(202) 857-4812 (facsimile)
Jeff.Holmstead@bracewell.com
Brittany.Pemberton@bracewell.com

*Counsel for Sinclair Wyoming Refining
Co. and Sinclair Casper Refining Co.*

Respectfully Submitted,

/s/ Ryan C. Morris
Ryan C. Morris
Timothy K. Webster
Peter Whitfield
Christopher S. Ross*
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C.  20005
(202) 736-8000 (telephone)
(202) 736-8711 (facsimile)
rmorris@sidley.com
twebster@sidley.com
pwhitfield@sidley.com
christopher.ross@sidley.com

*Admitted only in New York and Ohio;
pending approval of application for
admission to the D.C. Bar, practicing law in
D.C. under the supervision of principals of
the firm who are members in good standing
of the D.C. Bar.

*Counsel for HollyFrontier Refining &
Marketing LLC and HollyFrontier
Cheyenne Refining LLC*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of D.C. Circuit Rule

32(e), because it contains 9,056 words (as determined by the Microsoft Word 2016

word-processing system used to prepare the brief), excluding the parts of the brief

exempted by Federal Rule of Appellate Procedure 32(f) and D.C. Circuit Rule

32(e)(1).

This brief also complies with the typeface requirements of Federal Rule of

Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of

Appellate Procedure 32(a)(6) because it has been prepared in a proportionally

spaced typeface using the Microsoft Word 2016 word-processing system in 14-

point Times New Roman font.

/s/ Ryan C. Morris
*Counsel for HollyFrontier Refining &
Marketing LLC and HollyFrontier
Cheyenne Refining LLC*

# CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2019, I electronically filed the foregoing using the Court's CM/ECF system, which will send notifications to all counsel registered to receive electronic notices.

/s/ Ryan C. Morris
*Counsel for HollyFrontier Refining &*
*Marketing LLC and HollyFrontier*
*Cheyenne Refining LLC*